UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

STEVEN SIRACUSA,

*Plaintiff*,

– against –

NEW HYDE PARK-GARDEN CITY
UNION FREE SCHOOL DISTRICT;
JENNIFER MORRISON-RAPTIS; and
KIM LAREGINA,

*Defendants.*

**MEMORANDUM & ORDER**
24-cv-01002 (NCM) (LGD)

---

**NATASHA C. MERLE**, United States District Judge:

Before the Court is defendants New Hyde Park-Garden City Park Union Free School District (the "District"), Dr. Jennifer Morrison-Raptis, and Kim LaRegina's partial motion to dismiss plaintiff's second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Defendants move to dismiss plaintiff's First Amendment retaliation claim as against all defendants and plaintiff's New York Civil Service Law § 75-b claim as against individual defendants Dr. Morrison-Raptis and LaRegina. For the reasons stated below, defendants' motion is **GRANTED** in part and **DENIED** in part.

---

[1]    The Court hereinafter refers to the Second Amended Complaint, ECF No. 49, as the "SAC"; Defendants' Memorandum of Law in Support of Their Motion to Dismiss, ECF No. 60-1, as the "Motion"; Plaintiff's Memorandum of Law in Opposition to the Motion, ECF No. 60-2, as the "Opposition"; and Defendants' Reply Memorandum of Law in Further Support of their Motion, ECF No. 60-3, as the "Reply."

**BACKGROUND**

The Court assumes the parties' familiarity with the facts and procedural history. Except where otherwise noted, the following facts are taken from the SAC and are assumed true for purposes of this Opinion.

Plaintiff Steven Siracusa has been employed with the District as a music teacher for approximately 20 years. SAC ¶ 13. For the past several years, plaintiff has split his time teaching at two schools in the District: New Hyde Park Road School and Garden City Park School. SAC ¶ 14. During the 2020–2021 school year, the District began "aerosolizing" a surface disinfectant called Virex II 256 ("Virex"), following the onset of the COVID-19 pandemic. SAC ¶ 15. Upon returning to teach in the District, plaintiff began experiencing various health issues, including "widespread skin rashes, shortness of breath, coughing, wheezing, and eye/vision issues." SAC ¶ 16.

On January 8, 2021, plaintiff emailed defendant Dr. Morrison-Raptis, the District superintendent, concerning his health issues. SAC ¶¶ 11, 17. Plaintiff attached a letter from his dermatologist opining that Virex should not be aerosolized due to the chemicals it contains, and stating the safety and health risks associated with the aerosolization of those chemicals. SAC ¶ 17. Several days later plaintiff met with District administrators, including Dr. Morrison-Raptis and defendant Kim LaRegina, the principal of New Hyde Park Road School, concerning plaintiff's "safety concerns regarding the aerosolization of Virex." SAC ¶¶ 18–19.

Virex continued to be sprayed throughout the District, including after plaintiff's meeting with District administrators. *See* SAC ¶¶ 20–21. Virex was sprayed "within student bathrooms, staff bathrooms, the water fountains, the cafeteria and in the hallways

and in reach of the students in the classrooms throughout the school day while the students attended school." SAC ¶ 21. Plaintiff continued to experience health issues because of "the aerosolization of Virex," including added symptoms of a burning sensation in his eyes and shortness of breath. SAC ¶ 22.

In the months following plaintiff's complaints to District officials about Virex, he began to experience a series of what he alleges to be "adverse employment actions." SAC ¶ 23. Namely, plaintiff was denied school supplies, assigned a less preferable schedule, and denied access to classroom facilities. SAC ¶¶ 24, 26–27.

In June 2023, more than two years after his original complaint to the District about Virex, plaintiff's classroom space was reassigned to another teacher, Cindy Hazleton. SAC ¶ 44. Plaintiff felt that Hazleton was harassing him because of the room reassignment and attempted to bring the issue to LaRegina's attention. *See* SAC ¶ 46. Plaintiff attended a meeting with LaRegina and other District personnel concerning Hazelton's behavior. SAC ¶ 47. That meeting culminated in a confrontation between plaintiff, Dr. Morrison-Raptis, LaRegina, and another administrator, in which the District staff "began to scold Mr. Siracusa, falsely stating that they sent him an email informing him of the room change, accusing him of acting crazy, being mentally unfit, and saying that he was intimidating and scaring other staff members." SAC ¶ 49–51.

Plaintiff was placed on administrative leave the next day. SAC ¶ 55. While out on administrative leave, plaintiff received a letter from the District informing him that he was required to attend a medical examination pursuant to New York State Education Law § 913. SAC ¶ 57. On August 31, 2023, plaintiff—along with his counsel—attended the examination with a District-appointed psychologist. SAC ¶ 57. Plaintiff later learned that

the psychologist's examination report declared plaintiff "unfit to teach in the District." SAC ¶ 60.

On September 6, 2023, plaintiff filed a complaint with the New York State Department of Labor's Public Employee Safety and Health Department ("PESH") concerning the District's "improper application" of Virex. SAC ¶ 58. Around November 9, 2023, plaintiff filed a complaint with the Environmental Protection Agency ("EPA"), again "pertain[ing] to the District's improper and continued aerosolization" of Virex. SAC ¶ 61. Approximately one month later, plaintiff filed a similar complaint with the New York State Education Department's Office of Facilities and Planning ("State Education Department's OFP"). SAC ¶ 61.

On December 5, 2023, the District served plaintiff with a letter informing him that he would be charged pursuant to New York State Education Law § 3020-(a) and (b) ("3020-a"). SAC ¶ 62. The charges sought to terminate plaintiff's employment with the District. SAC ¶ 62. The next day, the District delivered the specific charges, "chiefly alleg[ing] insubordination for [plaintiff] making protected complaints against his administrators." SAC ¶ 62.

On February 8, 2024, plaintiff sued defendants in the instant action, bringing claims for First Amendment retaliation, violation of New York State Civil Service Law § 75(b), and gender and age discrimination pursuant to the New York State Human Rights Law. *See generally* Compl., ECF No. 1. The following week, plaintiff moved for preliminary injunctive relief, seeking, among other things, to enjoin defendants from terminating plaintiff's employment pursuant to the 3020-a disciplinary charges. *See* Unsigned Order to Show Cause, ECF No. 7.

The Court held a hearing on plaintiff's motion, at which plaintiff was asked to clarify his requests for relief and the status of his 3020-a proceedings. *See* ECF Minute Entry dated Feb. 21, 2024 ("Prelim. Hr'g"). The Court did not rule on plaintiff's requests at the hearing and set a briefing schedule for the motion. *See* Prelim. Hr'g. The Court then held an evidentiary hearing at which plaintiff cross-examined LaRegina. *See* ECF Minute Entry dated July 11, 2024.

In a Memorandum and Order, this Court denied plaintiff's motion for a preliminary injunction without prejudice. *See* Memorandum & Order ("M&O") 26,[2] ECF No. 34. The Court concluded that it was required to abstain from exercising jurisdiction over the matter pursuant to *Younger v. Harris*, 401 U.S. 37 (1971) and—even if there was an applicable exception to *Younger*—plaintiff was not entitled to a preliminary injunction because he did not adequately demonstrate irreparable harm. *See* M&O 8, 15.

Shortly thereafter, plaintiff filed the SAC. *See generally* SAC. In addition to the claims raised in his original complaint, plaintiff brought claims under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.*, the Age Discrimination and Employment Act of 1976, 29 U.S.C. §§ 621–34, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq. See* SAC ¶¶ 85–120. Defendants then filed the instant motion, seeking to dismiss plaintiff's First Amendment retaliation claim as against all defendants and his New York Civil Service Law § 75-b claim as against the individual defendants. *See generally* Mot.

---

[2]    Throughout this Opinion, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

## LEGAL STANDARD

When deciding a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014).[3] Factual disputes are typically not the subject of the Court's analysis, as Rule 12 motions "probe the legal, not the factual, sufficiency of a complaint." *Plastic Surgery Grp., P.C. v. United Healthcare Ins. Co. of N.Y., Inc.*, 64 F. Supp. 3d 459, 468–69 (E.D.N.Y. 2014). That is, "the issue" on a motion to dismiss "is not whether a plaintiff will ultimately prevail" but instead whether a plaintiff is "entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012). Accordingly, dismissal is only appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000). At the same time, a plaintiff must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conclusory allegations and legal conclusions masquerading as factual conclusions do not suffice to survive a motion to dismiss. *Nwaokocha v. Sadowski*, 369 F. Supp. 2d 362, 366 (E.D.N.Y. 2005) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)).

---

[3]    Throughout this Opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

## DISCUSSION

### I.    First Amendment Retaliation

To plead a First Amendment retaliation claim, a plaintiff must allege that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).

"[T]he viability of a prima facie First Amendment retaliation claim depends on context." *Zherka v. Amicone*, 634 F.3d 642, 643 (2d Cir. 2011). Specifically, courts distinguish between retaliation claims brought by public employees and prisoners, and claims brought by private citizens. *See Doe v. City of New York*, No. 18-cv-00670, 2018 WL 3824133, at *11 (E.D.N.Y. Aug. 9, 2018) ("The Second Circuit has traditionally applied . . . another, more stringent, test to the First Amendment retaliation claims of private citizens.").

Defendants argue that plaintiff fails to plead a retaliation claim for four reasons: (1) plaintiff fails to "allege his speech was chilled," Mot. 5; (2) plaintiff's complaints concerning the District's use of Virex are not protected speech because those complaints "fall[] within the purview of his official teaching duties," Mot. 10; (3) plaintiff fails to plead an "adverse" action, Mot. 11; and (4) to the extent plaintiff does allege adverse employment action(s), he fails to plead a causal connection between those actions and the alleged protected speech, *see* Mot. 12, Reply 6. The Court addresses each argument in turn.

A. *Chilling*

"Chilled speech is not the *sine qua non* of a First Amendment claim." *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (per curiam). A plaintiff may satisfy the "chilled speech" prong of a First Amendment retaliation claim by showing "some other concrete harm" that is not based in the plaintiff's speech itself. *Id.*; *see also Searle v. Red Creek Cent. Sch. Dist.*, No. 22-cv-02049, 2023 WL 3398137, at *2 (2d Cir. May 12, 2023) ("[I]n limited contexts, other forms of harm have been accepted in place of this 'actual chilling' requirement."). Still, "only limited sorts of concrete harms will substitute for chilling effect." *Schoolcraft v. City of New York*, 133 F. Supp. 3d 563, 572–73 (S.D.N.Y. 2015).

Where public employees allege First Amendment retaliation, they typically need not "demonstrate a chill subsequent to the adverse action taken against them." *Gill v. Pidlypchak*, 389 F.3d 379, 382 (2d Cir. 2004); *see also Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 955–56 (2d Cir. 2015) (concluding that the district court erred as a matter of law in requiring the plaintiff to "prove defendants' actions effectively chilled the exercise of his First Amendment right"). This is so because an adverse employment action typically goes "above and beyond chilling" to demonstrate injury. *Avgerinos v. Palmyra-Macedon Cent. Sch. Dist.*, 690 F. Supp. 2d 115, 132 (W.D.N.Y. 2010). A public employee's "burden is to show that he . . . was punished," not that his speech was chilled. *Gill*, 389 F. 3d 379, 382 (2d Cir. 2004).

Plaintiff, a teacher employed by the District, is a public employee. *See* SAC ¶¶ 9, 13; *see generally Cohn v. Dep't of Educ. of N.Y.*, 697 F. App'x 98 (2d Cir. 2017) (summary order). Accordingly, dismissal is not warranted due to any deficiency in plaintiff's

"chilling" allegations in the SAC given the concrete harms included in plaintiff's SAC. *See Morrison v. Johnson*, 429 F.3d 48, 51–52 (2d Cir. 2005) (finding district court misapplied law in dismissing public employee's first amendment claim "for failure to adduce evidence of an actual chilling effect"). Moreover, even if plaintiff was not a public employee, lack of chilling allegations would not be fatal to his claim. *See e.g.*, *Guan v. Mayorkas*, 530 F. Supp. 3d 237, 259 (E.D.N.Y. 2021) (finding failure to allege chilling effect did not warrant dismissal because the plaintiffs sufficiently alleged concrete harm).[4]

Here, plaintiff's allegations that he was reassigned away from classroom space, given a critical year-end evaluation, issued 3020-a disciplinary charges, and assigned a heavier workload, are sufficient to adequately allege concrete harms. *See* SAC ¶¶ 44–45, 57, 62, 77–80; *see e.g., Taylor v. N.Y.C. Dep't of Educ.*, No. 11-cv-03582, 2012 WL 5989874, at *9 (E.D.N.Y. Nov. 30, 2012) (explaining that negative evaluation letters, assignment of lunchroom duty, and reduction of classroom preparation periods "may qualify as adverse employment actions for purposes of a retaliation claim").

---

[4]     Defendants also cite *Podlach v. Village of Southampton*, No. 14-cv-06954, 2017 WL 4350433 (E.D.N.Y. May 11, 2017), *report and recommendation adopted*, 2017 WL 4350434 (June 6, 2017), *aff'd*, 767 F. App'x 200 (2d Cir. 2019) in support of their argument that a "chilling" allegation is necessary. Mot. 10. In *Podlach*, a private citizen brought a First Amendment retaliatory prosecution claim against a village and the village's police department and officers. 2017 WL 4350433, at *9. *Podlach* is distinguishable not only because it involved a private citizen—rather than a public employee—but also because the court there found that the plaintiff's retaliation claim was "premised upon intimidation and threats," requiring the plaintiff to "set forth a particularized and specific chilling effect." *Id.* at *10. The court determined that the plaintiff failed to substantiate her claim by failing to "cite to any specific time" she in fact felt intimidated or restrained. *Id.* at *11.

B. *Protected Speech*

The First Amendment protects a public employee's speech if "the employee spoke as a citizen on a matter of public concern." *Reynolds v. City of New York*, No. 23-cv-00076, 2024 WL 1043495, at *2 (2d Cir. Mar. 11, 2024) (summary order). "This inquiry, in turn, involves two distinct sub-questions: first, whether the speech's subject was a matter of public concern, and second, whether the employee was speaking in his or her capacity as a citizen." *Id.*  If the answer to either question is no, the public employee has not engaged in speech protected by the First Amendment. *Montero v. City of Yonkers*, 890 F.3d 386, 395 (2d Cir. 2018).

Speech does not concern a public matter if the "speech . . . principally focuses on an issue that is personal in nature and generally related to the speaker's own situation" or "is calculated to redress personal grievances—even if touching on a matter of general importance." *McKinnies v. City of New York*, No. 23-cv-02567, 2024 WL 4333703, at *10 (E.D.N.Y. Sept. 27, 2024) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).

A public employee does not speak as a private citizen when making "statements pursuant to their official duties." *Garcetti*, 547 U.S. at 421. In other words, courts consider "whether the employee's speech was part-and-parcel of that person's concerns about his ability to properly execute his duties." *Montero*, 890 F.3d at 398. This inquiry "is a practical one." *Weintraub v. Bd. of Educ. of City Sch. Dist.*, 593 F.3d 196, 202 (2d Cir. 2010). Courts ask two questions to assist in this practical inquiry: (1) "did the speech fall outside of the employee's official responsibilities[?]" and (2) "does a civilian analogue exist?" *Matthews v. City of New York*, 779 F.3d 167, 173 (2d Cir. 2015). Central to this determination is "the perspective of the speaker." *Weintraub*, 593 F.3d at 204. Although

not dispositive, the presence of a civilian analogue bears on the perspective a public employee occupied when speaking. *See Alvarez v. Staple*, 345 F. Supp. 3d 320, 331 (S.D.N.Y. 2018).

Accordingly, where the speech at issue "was made to politicians, the press, or other external channels," courts "have often found that the speech had a civilian analogue and was made as a citizen rather than an employee." *Taylor v. N.Y.C. Dep't of Educ.*, No. 11-cv-07833, 2012 WL 3890599, at *4 (S.D.N.Y. Sept. 6, 2012) (collecting cases); *see also Jackler v. Byrne*, 658 F.3d 225, 241 (2d Cir. 2011) ("[A]n indicium that speech by a public employee has a civilian analogue is that the employee's speech was to an independent state agency responsible for entertaining complaints by any citizen in a democratic society regardless of his status as a public employee[.]"). In contrast, where a plaintiff's speech "was made through internal channels," courts have held that such instances lack a relevant civilian analogue and therefore constitute employee speech not protected by the First Amendment. *Taylor*, 2012 WL 3890599, at *4.

Here, plaintiff alleges that he complained about the District's use of Virex to District personnel, SAC ¶ 87, as well as external agencies, including the EPA, the State Education Department's OFP, and PESH, SAC ¶¶ 58, 95. Defendants contend that these complaints were made in plaintiff's capacity as a public employee rather than a private citizen. Mot. 10. The Court analyzes the alleged internal and external complaints separately.

For the reasons stated below, the Court finds that the allegations in plaintiff's complaint do not plausibly allege that the internal complaints were brought in his capacity as a private citizen, but instead, as a public employee. However, the allegations do

plausibly allege that plaintiff's external complaint to the EPA was brought in his capacity as a private citizen.

### i. Complaints to District Personnel

To begin, "*internal* complaints by teachers" regarding "safety issues, staffing/service issues, violation of school policy, or misuse of school property/information . . . constitute speech as a public employee[.]" *Kelly v. Huntington Union Free Sch. Dist.*, No. 09-cv-02101, 2012 WL 1077677, at *15 (E.D.N.Y. Mar. 30, 2012) (emphasis in original) (collecting cases). This is because school safety is "part and parcel" of a teacher's official duties. *See Massaro v. Dep't. of Educ. of N.Y.*, No. 08-cv-10678, 2011 WL 2207556, at *4 (S.D.N.Y. June 3, 2011) (finding "complaints regarding the sanitary conditions in [the plaintiff's] classroom and the health conditions that arose from them" were employee speech), *aff'd*, 481 F. App'x 653 (2d Cir. 2012) (summary order). Furthermore, "courts have routinely held as a matter of law that a teacher's advocacy on behalf of h[is] students falls squarely within h[is] official duties as a teacher." *Ehrlich v. Dep't of Educ. of N.Y.*, No. 11-cv-04114, 2012 WL 424991, at *3 (S.D.N.Y. Feb. 6, 2012) (collecting cases).

Plaintiff argues that a determination as to whether a public employee speaks pursuant to his official duties would be premature at the motion to dismiss stage. *See* Opp'n 10. Plaintiff further argues that, even if such a determination were not premature, his complaints were not made pursuant to his official duties because his duties as a music teacher "in no way relate[] to the improper aerosolization of harmful chemicals." Opp'n 10. Plaintiff's contentions fail.

Although plaintiff is correct that determining whether an employee spoke pursuant to his official duties is a "fact-intensive" inquiry, "in some cases, the parameters of the employee's official duties are so well established and the allegations in the complaint are so specific as to permit such a determination to be made upon a motion to dismiss." *Fierro v. City of New York*, No. 20-cv-09966, 2022 WL 428264, at *5 (S.D.N.Y. Feb. 10, 2022). Indeed, courts have repeatedly made such determinations in cases involving public school employees "alleg[ing] retaliation for statements made to supervisors regarding classroom and school safety" at the motion to dismiss stage. *Anglisano v. N.Y.C. Dep't of Educ.*, No. 14-cv-03677, 2015 WL 5821786, at *6 (E.D.N.Y. Sept. 30, 2015) (collecting cases); *see e.g.*, *Medina v. Dep't of Educ. of N.Y.*, No. 10-cv-01180, 2011 WL 280800, at *1, 3–4 (S.D.N.Y. Jan. 14, 2011) (finding guidance counselor's complaints about "public health and safety issues" were not plausibly made as a private citizen); *Felton v. Katonah Lewisboro Sch. Dist.*, No. 08-cv-09340, 2009 WL 2223853, at *5 (S.D.N.Y. July 27, 2009) (determining that teacher and aide's complaints about the "safety implications (both as to them and as to their students)" of inadequate school supplies were made pursuant to their official duties).

Here, plaintiff complained about the District's use of Virex "in the District's public schools." SAC ¶ 3. He first raised these complaints "upon his return to the District in or about September 2020, during a meeting with District personnel." SAC ¶ 87. Plaintiff's arguments that these complaints were made as a private citizen are not supported by the allegations in his complaint or the law and thus fail.

First, plaintiff argues that his job duties "*do not* consist of applying . . . chemicals, monitoring their usage, or ensuring they are used in accordance with their instructions."

Opp'n 10. This argument is without merit. Public employees may speak pursuant to their "official job duties even though [that speech] is not required by, or included in, the employee's job description, or in response to a request by the employer." *Weintraub*, 593 F.3d at 203. With respect to teachers such as plaintiff, classroom safety and a teacher's "ability to perform h[is] duties in the space" are "indispensable prerequisites to effective teaching and classroom learning." *Massaro*, 2011 WL 2207556, at *4 (quoting *Weintraub*, 593 F.3d at 203). Plaintiff's speech concerned how the application of Virex in District schools impacted his health and how it would impact others. Indeed, plaintiff alleges that he was retaliated against "for advocating for other members of the school and its students, regarding the improper and hazardous application of Virex[.]" SAC ¶ 86. These complaints bear directly on plaintiff's ability to teach and his concern for his students' safety, both of which fall squarely within plaintiff's duties as a teacher. *See Massaro*, 2011 WL 2207556, at *4 (finding teacher's complaints were made pursuant to her official duties because "the communications were made as part of . . . reports concerning the particulars of Plaintiff's experience as a teacher in the classroom and the relationship between her medical symptoms and exposure to the classroom").

Next, plaintiff's contention that his "complaints did not directly reference or allude to any impact the chemical spraying had on his ability to teach nor his ability to provide an appropriate learning environment for his students[,]" does not compel a different conclusion. *See* Opp'n 11. For one, the suggestion that plaintiff's complaints were unrelated to his ability to teach or his students' learning environment is belied by the allegations in the complaint. Plaintiff alleges that he apprised Dr. Morrison-Raptis of the "health issues he was experiencing" due to Virex, which was being used in the facilities

14

where he worked. SAC ¶ 17. Plaintiff also alleges that Virex was sprayed "in reach of the students in the classrooms throughout the school day while the students attended school." SAC ¶ 21. Plaintiff fails to plead additional facts that would permit the Court to draw the reasonable inference that these complaints were unrelated to plaintiff's "ability to properly execute his duties," or concern about his students' learning environment. *See Micillo v. N.Y.C. Dep't of Educ.*, No. 14-cv-00943, 2015 WL 427392, at \*5 (S.D.N.Y. Feb. 2, 2015), *report and recommendation adopted*, 2015 WL 915270 (Mar. 3, 2015).

Moreover, even if plaintiff's complaints were unrelated to his ability to teach or his students' learning environment, "complaints concern[ing] students' safety," are squarely within a teacher's job responsibilities. *Adams v. N.Y. State Educ. Dep't*, No. 08-cv-05996, 2010 WL 624020, at \*24 (S.D.N.Y. Feb. 23, 2010), *report and recommendation adopted in part*, 705 F. Supp. 2d 298 (S.D.N.Y. 2010). As alleged, plaintiff advised District personnel "of his safety concerns" regarding Virex—clearly within his responsibilities as a teacher. SAC ¶ 19; *see also* SAC ¶ 86 ("Plaintiff . . . advocat[ed] for other members of the school and its students, regarding the improper and hazardous application of Virex[.]").[5]

---

[5]    Plaintiff attempts to distinguish his case by implying that, unlike defendants' cited cases, plaintiff's complaints about Virex did not pertain specifically to classrooms where he taught. Opp'n 11, n.1. Plaintiff further argues that his case is distinguishable because he learned about the "improper application" of Virex based on "his research of the chemical," rather than through his role as a teacher. Opp'n 10. These arguments are of no moment. First, a teacher's internal complaints about school-wide safety issues falls within the purview of his official duties. *See Smeraldo v. Jamestown Pub. Sch.*, No. 21-cv-00578, 2023 WL 424490, at \*6 (W.D.N.Y. Jan. 26, 2023) (finding public school teacher's complaints to supervisors about "unsafe equipment, lax safety considerations, guns on campus, [and] unsafe building conditions," were made pursuant to his official duties). Next, that plaintiff conducted his own research after learning that the District "improper[ly] and hazardous[ly] appli[ed]" Virex upon his return to teaching has no bearing on whether his speech—"adovaca[cy] for other members of the school and its students," SAC ¶ 86–87—"owed its existence to h[is] professional responsibilities as a

Accordingly, plaintiff's complaint does not plausibly allege that the complaints to District administrators regarding Virex were not made pursuant to his official duties and, thus, do not constitute protected speech under the First Amendment.

### ii. Reports to External Agencies

Whether plaintiff's allegations support that his complaints to external agencies regarding the District's use of Virex were made pursuant to his official duties presents a more difficult question. Even external complaints may constitute employee speech: "merely reporting information outside the chain of command is not necessarily sufficient, in and of itself, to establish that a public employee was speaking as a citizen." *Williams v. County of Nassau*, 779 F. Supp. 2d 276, 283–84 (E.D.N.Y. 2011) (collecting cases). Instead, where "the content of an employee's speech is directed toward the proper performance of their own, specific job duties," it "likely" constitutes employee speech "even if made through external channels." *Taylor*, 2012 WL 3890599, at *5. Nevertheless, allegations that an employee complained externally "weigh[s] heavily in favor of finding that the employee was acting as a private citizen." *Krzesaj v. N.Y.C. Dep't of Educ.*, No. 16-cv-02926, 2017 WL 1031278, at *9 (S.D.N.Y. Mar. 15, 2017), *overruled on other grounds by Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 100 n.7 (2d Cir. 2020).

For example, in *Taylor*, a middle school teacher alleged that her students received grades in a course under her name that she had not in fact taught. 2012 WL 3890599, at *1. The teacher brought the allegedly fraudulent grades to the attention of, among others,

---

teacher." *Stahura-Uhl v. Iroquois Cent. Sch. Dist.*, 836 F. Supp. 2d 132, 142 (W.D.N.Y. 2011); *see also Micillo v. N.Y.C. Dep't of Educ.*, No. 14-cv-00943, 2015 WL 427392, at *5 (S.D.N.Y. Feb. 2, 2015) (reasoning that the plaintiff's speech about fraud "owed its existence" to his employment because he "learned of the . . . fraud during his employment while performing his employment responsibility").

a New York City Council Member, a New York State Senator, and the press. *Id.* In ruling on the defendants' motion to dismiss, the court rejected the argument that the speech "was about a work-place issue concerning [the plaintiff's] students' grades and was, therefore, advocacy on their behalf falling within her official duties." *Id.* at *6. Instead, the court reasoned that there was a "range of possible content" to the plaintiff's external complaints about the fraudulent grades, some of which may support a finding that the speech was protected. *Id.* at *6. The court explained that while it was possible that the plaintiff's complaints only constituted advocacy on behalf of her students, based on the facts alleged, the court could draw a reasonable inference that her complaints to external sources reached beyond the performance of her duties, for example, by "reporting fraud, corruption, or criminal behavior[.]" *Id.* at *7. The Court therefore declined to determine whether plaintiff's complaints were made in her capacity as a public employee or private citizen "[a]bsent a more detailed record of the content and circumstances of [the plaintiff's] speech." *Id.* at *8.

Plaintiff here alleges that he complained about the District's use of Virex to three external agencies: (i) the EPA; (ii) PESH; and (iii) the State Education Department's OFP. SAC ¶¶ 58, 61. In plaintiff's view, these external complaints "clearly demonstrate that he acted as a private citizen outside of his chain of command rather than in the performance of his official duties." Opp'n 11. As discussed above, reporting outside the chain of command is insufficient on its own to establish that plaintiff was speaking as a private citizen. *See Williams*, 779 F. Supp. 2d at 283–84.

Plaintiff fails to plead that his complaints to PESH and the State Education Department's OFP were protected, but he does sufficiently allege that his complaint to the

EPA was protected. Communications with administrative agencies through channels that are "generally available to private citizens," that is, speech with a civilian analogue, may demonstrate that the speech was made as a private citizen. *Dingle v. City of New York*, No. 10-cv-00004, 2011 WL 2682110, at *6 (S.D.N.Y. July 7, 2011).  However, courts have found that complaints to agencies directly responsible for handling complaints by public employees are "not analogous to reporting such concerns to an elected representative, inspector general, or newspaper[,]" and do not demonstrate that the speech was made as a private citizen. *Hanley v. Nassau Health Care Corp.*, No. 10-cv-03884, 2013 WL 3364375, at *7 n.8 (E.D.N.Y. July 3, 2013); *see also Krzesaj*, 2017 WL 1031278, at *8 (concluding on motion to dismiss that gym teacher's "complaints to PESH and OSHA were . . . made pursuant to his role" as a teacher); *accord Garcetti*, 547 U.S. at 423 ("Employees who make public statements outside the course of performing their official duties retain some possibility of First Amendment protection because that is the kind of activity engaged in by citizens who do not work for the government.").

Plaintiff fails to plausibly allege that his complaints to PESH and the State Education Department's OFP were not made pursuant to his official duties. For one, PESH "provide[s] a vehicle specifically for public employees to report health and safety violations." *Krzesaj*, 2017 WL 1031278, at *8. Similarly, plaintiff's alleged complaint to the State Education Department's OFP, an entity within the state education system, is not analogous to the channels of discourse generally available to private citizens. *See Hanley*, 2013 WL 3364375, at *7 n.8 (rejecting argument that nurse's reports to Nassau County Department of Social Services concerning "improper practices" of hospital were not made

pursuant to her duties as a public employee because "reporting . . . concerns to an entity within the . . . public health care system" is not a civilian analogue).

However, plaintiff has sufficiently alleged that his report to the EPA constituted speech as a private citizen. Plaintiff alleges that he filed a complaint with the EPA regarding "the District's improper and continued aerosolization of Virex II 256." SAC ¶ 61. While it is certainly possible that this complaint concerned plaintiff's ability to teach or the safety of the District's students, it is also possible, for example, that this complaint pertained to violations of environmental law or regulations. *See Dingle*, 2011 WL 2682110, at *6 (extending First Amendment protection to complaints lodged with administrative agencies where such agencies were "precisely where a private citizen" would lodge the complaints). Absent "the precise content" of the complaint to the EPA, the Court cannot conclude at the motion to dismiss stage that this speech fell within plaintiff's official duties. *See Smith v. N.Y.C. Dep't of Educ.*, No. 09-cv-09256, 2011 WL 5118797, at *7 (S.D.N.Y. Oct. 28, 2011) (explaining that "any reliable conclusion" of whether the plaintiff's complaints constituted protected speech "would require evidence of precisely what was said and to whom it was communicated").

Accordingly, plaintiff sufficiently alleges that his complaint to the EPA was made as a private citizen at this stage.

### C. Adverse Action

Like all retaliation claims, First Amendment retaliation requires allegations that "the defendant took an adverse action against" the plaintiff. *Montero*, 890 F.3d at 394. Actions are adverse if they "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Zelnik v. Fashion Inst. of Tech.*,

464 F.3d 217, 225 (2d Cir. 2006). Examples of adverse employment actions include "negative evaluation letters, express accusations of lying, assignment of lunchroom duty, reduction of class preparation periods, failure to process teacher's insurance forms, [and] transfer from library to classroom teaching as an alleged demotion[.]" *Id.* at 226. Ultimately, whether an action is adverse is a "heavily fact-specific, contextual determination." *Hoyt v. Andreucci*, 433 F.3d 320, 328 (2d Cir. 2006).

Plaintiff alleges that defendants took numerous "adverse employment actions" against him in retaliation for his complaints about Virex, including that he was: denied teaching supplies, SAC ¶ 24; assigned a less favorable teaching schedule, SAC ¶¶ 26, 32; denied classroom space and later reassigned from his classroom, SAC ¶¶ 29, 34–35, 39–45; denied requests for District administrators to file a harassment complaint on his behalf, SAC ¶ 47; placed on administrative leave, SAC ¶ 55; forced to attend a New York Education Law § 913 examination, SAC ¶ 57; issued 3020-a disciplinary charges, SAC ¶ 62; assigned a significantly heavier workload, SAC ¶¶ 77–80; subject to delayed approval and prevented access to a loan from his retirement plan, SAC ¶ 81; and harassed by a security officer sent to his home by the District, SAC ¶ 82. In defendants' view, most of these allegations, such as an undesirable teaching schedule and classroom assignment, are merely "trivial gripes" that do not constitute adverse actions. Mot. 11–12.

As a threshold matter, because the Court concludes that plaintiff only plausibly alleges that his speech with the EPA was protected, only alleged adverse actions that occurred after plaintiff's complaint to the EPA are relevant to the inquiry before the Court.

*See Gill*, 389 F.3d at 380 (requiring "a causal connection between the protected speech and the adverse action").[6]

Plaintiff alleges that roughly one month after he filed his complaint with the EPA, the District brought 3020-a disciplinary charges against him seeking to terminate his employment. SAC ¶¶ 61–62. Courts have consistently found that "3020-a charges are clearly an adverse employment action because the institution of disciplinary proceedings is sufficient in this circuit to constitute an adverse employment decision." *Kelly*, 2012 WL 1077677, at *16 n.21; *see also Murphy v. City of Rochester*, 986 F. Supp. 2d 257, 275 (W.D.N.Y. 2013) ("[T]he institution of the Section 3020-a proceeding counts as an adverse employment action.").[7]

Thus, plaintiff has sufficiently alleged an adverse action that would deter a similarly situated individual from exercising their constitutional rights by the initiation of disciplinary proceedings against him after his alleged complaint to the EPA.

---

[6]    Even if plaintiff's speech before his EPA complaint was protected, most of what plaintiff asserts to be adverse employment actions up to that point do not rise to the level of constitutional harm. See e.g., *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 256 (E.D.N.Y. May 24, 2012) ("Mere undesirable classroom assignments generally do not rise to the level of an adverse employment action.") (collecting cases); *Kane v. Carmel Cent. Sch. Dist.*, No. 12-cv-05429, 2014 WL 7389438, at *8–9 (S.D.N.Y. Dec. 15, 2024) (concluding that a Section 913 examination and paid administrative leave do not constitute adverse employment actions).

[7]    Plaintiff also alleges that—following his complaint with the EPA—he was: (i) given an excessive workload, SAC ¶¶ 76–80; (ii) subject to "delayed approval of and prevented [] access to" funds from his retirement plan, SAC ¶ 81; and (iii) "harassed, intimidated and embarrassed" by District administrators when they sent a security officer to his home, SAC ¶ 82. However, as explained *infra*, because plaintiff fails to plausibly plead a causal link between these alleged actions and the protected speech, the Court does not decide whether they constitute adverse employment actions.

### D. Causal Connection

Lastly, to state a First Amendment retaliation claim, plaintiff must allege causation: "that his protected speech was a substantial motivating factor in the adverse employment actions." *Van Allen v. N.Y.C. Sch. Const. Auth.*, No. 17-cv-02176, 2018 WL 4783966, at *8 (E.D.N.Y. Sept. 30, 2018) (quoting *Smith v. County of Suffolk*, 776 F. 3d 114, 118 (2d Cir. 2015)). A plaintiff can show causation "directly through a showing of retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse action." *Smith*, 776 F.3d at 118. There is no "bright line to define the outer limit of a sufficient temporal relationship." *Van Allen*, 2018 WL 4783966, at *9. However, courts "often" find the outer limit near "two or three months and almost universally disapprove[] longer time periods[.]" *Adams v. Ellis*, No. 09-cv-01329, 2012 WL 693568, at *16 (S.D.N.Y. Mar. 2, 2012) (collecting cases). Additionally, an inference of causation is defeated "if there was an intervening causal event that occurred" between the protected activity and alleged retaliatory action. *See Brady v. County of Suffolk*, 657 F. Supp. 2d 331, 355 (E.D.N.Y. 2009).

Plaintiff plausibly alleges that the 3020-a proceedings were causally connected to his complaint to the EPA. Plaintiff alleges that he filed his complaint with the EPA around November 9, 2023. SAC ¶ 61. Plaintiff further alleges that less than a month later, on December 5, he received a letter informing him that he would be charged under New York Education Law § 3020. SAC ¶ 62. At the motion to dismiss stage, this is sufficient to establish plaintiff's *prima facie* case. *See Heffernan v. Straub*, 655 F. Supp. 2d 378, 381 (S.D.N.Y. 2009) (finding fewer than three months between "institution of disciplinary

charges" and protected speech was "sufficient temporal proximity . . . to support an inference of causation").

Defendants contend that the 3020-a charges "were brought because of the psychiatrist's finding that Plaintiff was unfit to teach." Mot. 12. Defendants argue that "ignoring the conclusions of the mental health professional and simply enabling Plaintiff to return to work would put the safety and well-being of District staff and students in jeopardy." Reply 6. However, the SAC alleges that the psychiatrist declared plaintiff unfit to teach more than a month *before* he filed his complaint with the EPA, and two months before the 3020-a disciplinary proceedings were instituted against him. *See* SAC ¶¶ 60–62. Drawing all reasonable inferences in his favor, plaintiff sufficiently alleges that his external complaint to the EPA "was a substantial motivating factor" in the disciplinary proceedings instituted against him. *Smith*, 776 F.3d at 118.

The other "adverse employment actions" plaintiff alleges after his complaint with the EPA do not bear a "sufficient temporal relationship," with the allegedly protected speech. *See Van Allen,* 2018 WL 4783966, at *9. According to plaintiff, the first of these actions to occur after he filed his complaint with the EPA on November 9, 2023 was when he was given an excessive workload on August 28, 2024. SAC ¶ 76. While there is no bright line rule, a lapse of more than nine months between the protected speech and alleged adverse employment action fails to suggest a causal connection absent additional facts. *See Adams*, 2012 WL 693568, at *16 ("[C]ase law in the Second Circuit . . . almost universally disapproves" time periods longer than two or three months).

\*        \*        \*

In sum, the Court finds that plaintiff's complaint plausibly alleges facts to support a First Amendment retaliation claim and denies defendants' Motion insofar as it seeks dismissal of this claim premised on his complaint to the EPA. Accordingly, defendants' motion to dismiss plaintiff's First Amendment retaliation claim is denied.

## II.     New York Civil Service Law § 75

As defendants correctly point out, and plaintiff concedes, "claims under Section 75-b cannot be maintained against individual public employees." *Verdi v. City of New York*, 306 F. Supp. 3d 532, 549 (S.D.N.Y. 2018) (quoting *Eyshinskiy v. N.Y.C. Dep't of Educ.*, No. 15-cv-10027, 2016 WL 70174143, at *2 (S.D.N.Y. Dec. 1, 2016)), *aff'd sub nom.*, 692 F. App'x 677 (2d Cir. 2017) (summary order). Accordingly, plaintiff's Section 75-b claims against defendants Dr. Morrison-Raptis and LaRegina are dismissed without prejudice.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss is **GRANTED in part**, **DENIED in part**. Plaintiff's claim pursuant to New York Civil Service Law § 75-b as against defendants Dr. Morrison-Raptis and LaRegina is **DISMISSED**.

**SO ORDERED.**


  */s/ Natasha C. Merle*
NATASHA C. MERLE
United States District Judge


Dated:       March 28, 2025
             Brooklyn, New York

24